777 P.2d 916

**STATE of New Mexico, Plaintiff–Appellant,**

v.

**Jason C. YAZZIE, Defendant–Appellee.**

No. 10648.

Court of Appeals of New Mexico.

June 27, 1989.

Certiorari Denied Aug. 3, 1989.

Hal Stratton, Atty. Gen., Sharon Walton, Asst. Atty. Gen., Santa Fe, for plaintiff-appellant.

Jacquelyn Robins, Chief Public Defender, Bruce Rogoff, Asst. Appellate Defender, Santa Fe, for defendant-appellee.

## OPINION

ALARID, Judge.

The memorandum opinion filed in this case on June [1], 1989 is hereby withdrawn and, on defendant-appellee's motion, the following formal opinion is substituted. Plaintiff-appellant's motion for rehearing is denied.

The state appeals from the trial court's order suppressing evidence obtained as a result of an on-reservation arrest of an Indian defendant. The issue on appeal is whether the trial court erred in suppressing the evidence obtained during the on-reservation arrest of defendant. For the reasons stated below, we affirm the trial court's suppression.

When state law enforcement officers arrest an Indian defendant on a reservation without utilizing the available extradition process, the arrest is invalid. *Benally v. Marcum*, 89 N.M. 463, 553 P.2d 1270 (1976); *see also Arizona ex rel. Merrill v. Turtle*, 413 F.2d 683 (9th Cir.1969), *cert. denied*, 396 U.S. 1003, 90 S.Ct. 551, 24 L.Ed.2d 494 (1970). It is undisputed that a San Juan County Sheriff Department detective obtained an arrest warrant for defendant's arrest from a state magistrate. San Juan County deputy sheriffs Trotter and Vaughn went onto the Navajo reservation to locate defendant. They requested the assistance of the Navajo Tribal Police in the arrest, but were informed that a tribal policeman would not be available for three hours. The officers were concerned that vital evidence (the murder weapon) might disappear and would be lost based on information they had. In light of this concern, they proceeded to arrest defendant at his home on the reservation without the assistance of a tribal policeman. Under *Benally*, defendant's on-reservation arrest was invalid.

■ The state attempts to distinguish *Benally* by asserting that in this case the crime is a serious felony and there was an urgent need to preserve evidence of the crime. In effect, the state appears to argue that where its interests are great and a serious crime is involved, it should be allowed to ignore extradition procedures and violate tribal sovereignty. We can find no support for this proposition in *Benally*. *Benally* held that when an Indian commits a crime off-reservation, and is located on the reservation, tribal extradition procedures must be followed. If they are not, the arrest is illegal. *Benally* said nothing about restricting its holding to less serious cases, or to cases in which the state's need to arrest a defendant is not great.

■ The state attempts to argue that *Benally* and the Navajo Tribal Code proscribe only removal of an Indian defendant from a reservation, not an on-reservation arrest. We are not persuaded by this argument. This is contrary to the explicit holding in *Benally*, that the *arrest* of defendant was illegal because the state did not comply with the applicable tribal extradition procedures. Moreover, with respect to on-reservation apprehension of an Indian suspected of committing a crime outside Indian country, the Navajo Tribal Code provides that "the Chairman [of the Navajo Council] may order any Navajo policeman to apprehend such Indian and deliver him to proper state authorities at the Reservation boundary." Navajo Trib.Code tit. 17, § 1951 (1977). Accordingly, under the tribal code, only tribal policemen are authorized to carry out an on-reservation arrest of an Indian. Since the on-reservation arrest in the present case was not carried out by a tribal policeman and extradition procedures were not followed, the arrest was illegal. *Benally v. Marcum.*

■ The state then contends there was no violation of Indian sovereignty because the officers acted in a reasonable manner and sought assistance from the tribal officials. However, despite their request for assistance, the officers entered the reservation without waiting for assistance from the tribal police and without implementing extradition procedures. The fact that they called the tribal officers to request assistance prior to arresting defendant indicates that they knew such assistance, or extradition, was necessary. It is clear that the officers did not comply with the procedures required in this case. Inasmuch as the state contends the officers notified the tribe of their activities, and the tribe acquiesced in those activities, the state has provided no authority to establish that the tribal prosecutor was empowered to waive the applicable extradition procedures. *See In re Adoption of Doe,* 100 N.M. 764, 676 P.2d 1329 (1984).

The state's final argument is that the officers acted in good faith: therefore, the exclusionary rule should not apply. The state relies on *State v. Nahee,* 155 Ariz. 114, 745 P.2d 172 (Ct.App.1987), in support of this contention. *Nahee* is distinguishable from the present case for the reasons set out below.

In *Nahee,* local city police officers obtained a state warrant for the defendant's arrest and contacted a tribal officer to gain assistance in the defendant's arrest. The tribal officer advised the city police officers that it was necessary to obtain an arrest warrant from the tribal court. A warrant for Nahee's arrest was then obtained from the tribal court. Armed with this tribal arrest warrant, the tribal officer arrested Nahee on the reservation, placed him in a Bureau of Indian Affairs vehicle, physically transported him to the city police department, and turned him over to city police authorities. Unknown to either the tribal officer or the city officers, the applicable tribal code required, in addition to obtaining a tribal warrant, that the defendant be brought before the tribal court prior to his release to off-reservation authorities. The Arizona Court of Appeals held that the city police officers acted in good faith reliance on the tribal officer to effectuate the arrest in a proper manner. The court emphasized the fact that the mistake was made not by state law enforcement officials, but rather by the tribe's own designated agent. It further emphasized that the city officers enlisted the aid of the person they were

required to contact, obtained a tribal warrant, and left the execution of the warrant to the tribe's duly authorized representative. Under these circumstances, the court held that the exclusion of evidence obtained would not serve a primary purpose of the exclusionary rule, to deter police misconduct, since there was no misconduct by the city police officers. The court also held that a state statutory "good faith exception" applied, the trial court having found that the state officials acted in good faith.

The state contends the trial court made a specific finding that the officers acted in good faith in this matter, and that they had more jealously guarded Indian sovereignty than had the tribal officials. We find no such specific finding of good faith in the record before us. We assume the state is referring to the trial court's statement in its findings of fact that "it is incumbent upon the Court to commend the Sheriff of San Juan County and his deputies for their recognition throughout of the jurisdictional problem presented and their efforts to honor Tribal sovereignty. Ironically, in this instance, it was they and not the Tribal authorities who where [sic] most jealous in their protection of it." Although the trial court noted that the officers recognized the jurisdictional problem, it did not find that the officers had an objective basis for a good faith belief that their actions in arresting defendant were proper.

Moreover, this court views the evidence in the light most favorable to the trial court's findings. *State v. Boeglin*, 100 N.M. 127, 666 P.2d 1274 (Ct.App.1983). Viewing the stipulated facts and the evidence presented at the suppression hearing in the light most favorable to the trial court's finding that the evidence obtained pursuant to the arrest should be suppressed, the trial court's failure to find that the officers acted in good faith is supported by the evidence. To the contrary, as noted above, the officers first contacted tribal officers to request assistance in arresting defendant, indicating that they knew such assistance, or extradition, was necessary. However, unlike the officers in *Nahee*, they did not await the assistance of a tribal officer, but rather they proceeded to arrest defendant themselves without proper assistance from a tribal officer.

The misconduct in this case was committed by the state officials. There is nothing indicating that at the time they arrested defendant the officers had an objective belief that they had authority to arrest defendant without the assistance of a tribal officer based on their reliance on a statute, *see Illinois v. Krull*, 480 U.S. 340, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987), their reliance on a document, *see United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), or their reliance on a tribal official, *see State v. Nahee*. Therefore, the good faith exception is inapplicable under the facts of this case.

The state asserts that even if the good faith exception is not applied in this case, exclusion of evidence is not the appropriate remedy because no constitutional violation occurred, but rather there was an honest mistake about what the Tribal Code required. The state fails to cite any authority to support its contention that exclusion of evidence is not an appropriate remedy under the facts of this case. *See In re Adoption of Doe*. Accordingly, we hold that suppression is the appropriate remedy in this case.

For the reasons stated above, we affirm the trial court's suppression order.

IT IS SO ORDERED.

BIVINS, C.J., and MINZNER, J., concur.