819 P.2d 1332

**STATE of New Mexico,**
**Plaintiff–Appellant,**

v.

**Gloria GUTIERREZ, Reymundo Gutierrez and Johnny Garcia,**
**Defendants–Appellees.**

**No. 12007.**

Court of Appeals of New Mexico.

May 14, 1991.

Tom Udall, Atty. Gen., Bill Primm, Asst. Atty. Gen., Santa Fe, for plaintiff-appellant.

Jacquelyn Robins, Chief Public Defender, Hugh W. Dangler, Asst. Appellate Defender, Santa Fe, for defendants-appellees.

## OPINION

CHAVEZ, Judge.

The state appeals the trial court's order suppressing evidence as a result of the execution of a "no-knock" search warrant at the defendants' residence. The sole issue on appeal is whether the evidence should have been admitted pursuant to the good faith exception to the exclusionary rule adopted by the United States Supreme Court in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). In order to make this determination, we must decide whether to adopt the good faith exception pursuant to article II, section 10 of the New Mexico Constitution. We decline to adopt the exception and affirm the trial court's order.

FACTS

Defendants were indicted on various drug charges. Officer Gandara was a member of the Albuquerque Police Department's (APD) Valley Impact team. The Valley Impact Team primarily targets small street dealers of narcotics. As a result of an investigation of suspected drug activities at a Valley residence, which included a controlled buy of methamphetamine within 72 hours of the affidavit, Officer Gandara presented an affidavit for a search warrant to Judge Murdoch on August 4, 1989. The affidavit described the premises to be searched and alleged that drug trafficking was occurring at the residence. The affidavit concluded:

> [Affiant] has learned through previous investigations and search warrants that when a search warrant for drugs is announced, the persons in possession of the drugs often destroyed the evidence before officers can enter. This is usually done by either swallowing or flushing the evidence. Based on this information, affiant requests that the search warrant be considered a no-knock warrant.

Apart from the assertion that drugs are often destroyed before officers can enter the premises, the affidavit did not state any specific facts suggesting Officer Gandara had any belief that drugs would be destroyed by these specific defendants.

Judge Murdoch issued a search warrant on August 4, 1989. The warrant autho-

rized unannounced entry "for the protection of the officers and for the preservation of evidence." On August 14, 1989, officers of the Valley Impact Team executed the warrant at defendants' residence without knocking. Officers seized contraband at the residence. At the suppression hearing, Officer Gandara did not state any specific facts indicating that, at the time of the warrant's execution, officers were in danger or drugs would be destroyed. Rather, she expressed her belief that "no-knock" warrants may be issued based upon an officer's previous experience. Officer Gandara stated she had a good faith belief that the warrant was valid.

The trial court granted defendants' motion to suppress. In its letter decision, the trial court concluded that the United States and New Mexico Constitutions require an officer executing a warrant to knock and announce his purpose prior to entry absent exigent circumstances. The trial court also concluded that most jurisdictions do not allow a predetermination of exigent circumstances, and that there were insufficient exigent circumstances to permit a "no-knock" entry in this case.

DISCUSSION

In *United States v. Leon*, the Supreme Court adopted the good faith exception to the exclusionary rule. The trial court in *Leon* suppressed evidence found during the execution of a facially valid search warrant, because the affidavit did not establish the existence of probable cause. The Supreme Court reversed, concluding "that the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion." *Id.* at 922, 104 S.Ct. at 3420. The Supreme Court held that the exclusionary rule does not bar evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause. *Id.; see also Massachusetts v. Sheppard*, 468 U.S. 981, 987–88,

104 S.Ct. 3424, 3427–28, 82 L.Ed.2d 737 (1984). The Court reasoned that the exclusionary rule was designed to deter police misconduct rather than punish the errors of judges and magistrates. The trial court, in the case before us, concluded that the exception would apply if New Mexico had adopted the rule of *Leon*.

Justice White, writing for the Court, stated that whether the exclusionary rule should be applied should be determined by weighing the costs and benefits of preventing the use of inherently trustworthy tangible evidence obtained in reliance on a subsequently invalidated search warrant issued by a detached and neutral magistrate. *United States v. Leon*. The costs are the exclusionary rule's "interference with the criminal justice system's truth-finding function" and the consequence that "some guilty defendants may go free or receive reduced sentences as a result of favorable plea bargains." *Id.* 468 U.S. at 907, 104 S.Ct. at 3412. Justice White concluded that the deterrent effect was "marginal or nonexistent" in cases of good faith reliance on invalid search warrants. *Id.* at 922, 104 S.Ct. at 3420.

Suppression remains appropriate under *Leon* in four situations. *Id.* at 923, 104 S.Ct. at 3421. One instance justifying suppression of evidence seized under a subsequently invalidated warrant is when the magistrate or judge was misled by information in the affidavit which the affiant knew was false or would have known was false except for a reckless disregard for the truth. *Id.; Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). A second situation justifying suppression is when the issuing judge wholly abandons his judicial role. *United States v. Leon*, 468 U.S. at 923, 104 S.Ct. at 3421; *Lo–Ji Sales, Inc. v. New York*, 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979) (town justice became a member, if not the leader, of the search party).

Evidence may also be suppressed when the affidavit is so lacking in indicia of prob-

able cause that official belief in its existence is entirely unreasonable. *United States v. Leon; State v. Huft*, 106 Wash.2d 206, 720 P.2d 838 (1986) (en banc) ("bare bones" affidavit not subject to rehabilitation by the good faith exception). Finally, a warrant may be so facially deficient in particularizing the place to be searched or the things to be seized that the executing officer cannot reasonably presume it to be valid. *United States v. Leon*, 468 U.S. at 923, 104 S.Ct. at 3421; *cf. Massachusetts v. Sheppard*. We assume, without deciding, that the officers in this case exhibited objectively reasonable reliance on a warrant issued by a detached and neutral judge, and that none of the four exceptions stated in *Leon* are present.

New Mexico appellate courts have touched upon the *Leon* rule, but have not been presented with a proper opportunity to adopt or reject it. In *State v. Herrera*, 102 N.M. 254, 258 n. 1, 694 P.2d 510, 514 n. 1, *cert. denied*, 471 U.S. 1103, 105 S.Ct. 2332, 85 L.Ed.2d 848 (1985), the supreme court declined to address the good faith exception due to its disposition of the case. Similarly, in *State v. Crenshaw*, 105 N.M. 329, 334, 732 P.2d 431, 436 (Ct.App.1986), this court found it unnecessary to decide whether to adopt the good faith exception because the search warrant failed on the basis of a pre-warrant trespass by police. *See United States v. Leon* (state court in its discretion may resolve fourth amendment question before turning to good faith issue). In *State v. Therrien*, 110 N.M. 261, 794 P.2d 735 (Ct.App.1990), this court did not address the issue because it was not properly preserved. *See also State v. Yazzie*, 108 N.M. 677, 777 P.2d 916 (Ct.App. 1989) (court did not find that officers had an objective basis for a good faith belief that their actions in arresting defendant were proper).

■ We are not convinced that the costs of excluding evidence obtained as a result of an invalid search outweigh the benefits. We believe the costs of the exclusionary rule, as stated by the Supreme Court, are substantially overstated, while the benefits of the rule are similarly understated. *See* 1 W. LaFave, *Search and Seizure* § 1.3 (2d ed. 1987).

■ Initially, we note that the state does not request review of the trial court's finding that the "no-knock" warrant was invalid. The issue of whether a "no-knock" entry may be authorized in advance by warrant, based solely on the officers' past experience and general knowledge in drug cases, does not appear to have been definitively addressed in New Mexico. Our cases hold that prior to forcible entry, the police must give notice of authority and purpose and be denied admittance. *State v. Baca*, 87 N.M. 12, 528 P.2d 656 (Ct.App. 1974). An exception exists when exigent circumstances are present as when, prior to forcible entry, officers in good faith believe that they or someone in the house are in danger of bodily harm, or that the suspect is attempting to flee or destroy evidence. *State v. Sanchez*, 88 N.M. 402, 540 P.2d 1291 (1975); *State v. Baca*. The trial court found that there were insufficient exigent circumstances justifying a "no-knock" entry at the time of the search. In this case, the state concedes that at the time of the warrant's execution, the officers did not have specific facts showing defendants would be likely to dispose of their drugs.

■ There is nothing in SCRA 1986, 5–211 suggesting that a magistrate or judge may predetermine the existence of exigent circumstances and authorize execution of a warrant without knocking. The prevailing view appears to be that such warrants are invalid absent statutory authorization. *See* 2 W. LaFave, *Search & Seizure* § 4.8(g); *State v. Eminowicz*, 21 Ariz.App. 417, 520 P.2d 330 (1974); *compare State v. Cleveland*, 118 Wis.2d 615, 348 N.W.2d 512 (1984). However, we note that in *Sanchez*, the supreme court approved a "no-knock" entry based, in part, on the officers' probable cause to believe that defendant was selling heroin and from their experience that persons normally attempt to get rid of

the drugs prior to entry by the police. *See also State v. Anaya*, 89 N.M. 302, 551 P.2d 992 (Ct.App.1976) (exigent circumstances based, in part, on officers' experience that heroin is often disposed of by flushing it down the toilet). The supreme court in *Sanchez* did not decide whether the officer's general experience with drug searches would have been sufficient by itself to justify a "no-knock" entry. Nor did the supreme court definitively state that exigent circumstances could not be predetermined by resort to an affidavit for search warrant. *But see State v. Sanchez* (Sosa, J., dissenting) (exigent circumstances can only manifest themselves at time officers appear for the search and should be judged by what a prudent officer sees and hears at that time).

■ Given the state's failure to challenge the trial court's conclusion that "no-knock" warrants are not authorized by New Mexico law, we do not offer an opinion on whether the predetermination of exigent circumstances based solely on the officer's prior experience in drug cases invalidated the warrant. However, we do believe there was support for the trial court's finding that officers acted in good faith since it is not entirely clear from a reading of Rule 5–211, *Sanchez*, and other New Mexico cases that exigent circumstances may not be predetermined based upon an officer's prior experience. *See State v. Sanchez* (trial court's determination of "good faith belief" and "exigent circumstances" will be upheld if supported by substantial evidence).

The Supreme Court's opinion in *Leon* starts from the premise that the cost of the exclusionary rule is that some guilty defendants go free or receive favorable plea bargains. *United States v. Leon*, 468 U.S. at 907, 104 S.Ct. at 3412; *see also Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). We are also mindful that our own supreme court has severely criticized the exclusionary rule because of "its harsh impact on society." *State v. Snedeker*, 99 N.M. 286, 289, 657 P.2d 613,

616 (1982); *see also State v. Rascon*, 89 N.M. 254, 261, 550 P.2d 266, 273 (1976) (federal constitutional law as announced by United States Supreme Court applied to suppression of evidence). On the other hand, we take note of the more recent case of *State v. Cordova*, 109 N.M. 211, 784 P.2d 30 (1989), in which our supreme court departed from United States Supreme Court case law in interpreting article II, section 10 of the New Mexico Constitution. In *Cordova*, the supreme court construed article II, section 10, as affording defendants greater protection than the federal constitution.

Justice Brennan notes in his dissent in *Leon* that there is scant empirical support for the proposition that large numbers of guilty defendants go free as a result of the exclusionary rule. *United States v. Leon*, 468 U.S. at 907 n. 6, 104 S.Ct. at 3412 n. 6 (Brennen, J. dissenting); *People v. Sundling*, 153 Mich.App. 277, 395 N.W.2d 308 (1986); *Stringer v. State*, 491 So.2d 837 (Miss.1986) (Robertson, J., concurring). In fact, the data suggests that the loss in felony case prosecution because of prosecutor screening, police releases, and court dismissals attributable to evidence seized in violation of the Fourth Amendment is from 0.6% to 2.35%. Davies, *A Hard Look at What We Know (and Still Need to Learn) About the "Costs" of the Exclusionary Rule: The NIJ Study and Other Studies of "Lost" Arrests*, 1983 Am.B.Found.Res.J. 611, 621. Given the lack of evidence demonstrating that the exclusionary rule sets the guilty free, we question the utility of the good faith exception.

Similarly, we believe the benefits of the exclusionary rule have been understated. *See* 1 W. LaFave *Search & Seizure* § 1.3(d). We are convinced that adoption of a good faith exception would remove incentives for police to discover the sort of conduct constituting unreasonable invasions of privacy. *State v. Marsala*, 216 Conn. 150, 579 A.2d 58 (1990); *State v. Novembrino*, 105 N.J. 95, 519 A.2d 820 (1987). The exception might also effective-

ly remove the requirement of probable cause from the warrant process since police could always claim they acted in reasonable reliance on a warrant.

We agree with the court's statement in *People v. David,* 119 Mich.App. 289, 326 N.W.2d 485, (1982):

> Such a holding would, in effect, remove the probable cause requirement from the Fourth Amendment. A 'good-faith' exception to the exclusionary rule would insulate the magistrate's decision to grant a search warrant from appellate review. In every case where a constitutionally infirm search warrant was issued, the prosecution could reasonably claim that the police acted in good faith. In effect, the constitutional language that all warrants be issued only on a showing of probable cause would become a nullity.

> Furthermore, adoption of a 'good-faith' standard would remove the incentive for police officers to find out what sort of police conduct constitutes an unreasonable invasion of privacy. On a police force, efficiency in obtaining convictions is rewarded so recognition of a good-faith exception to the warrant requirement would encourage police officers to remain ignorant of the law in order to garner more evidence and obtain more convictions. The end result, increased illegal police activity, is the very problem that the exclusionary rule is designed to avert.

*Id.* at 297–98, 326 N.W.2d. at 488–89; *see also State v. Marsala; State v. Novembrino; People v. Bigelow,* 66 N.Y.2d 417, 488 N.E.2d 451, 497 N.Y.S.2d 630 (1985).

Also minimized by the *Leon* majority is the effect of the exclusionary rule on judges and magistrates. Justice White wrote under the premise that "the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates," and that there is "no basis ... for believing that exclusion of evidence ... will have a signif-

icant deterrent effect on the issuing judge or magistrate." *United States v. Leon,* 468 U.S. at 916, 104 S.Ct. at 3417. "Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." *Id.* at 921, 104 S.Ct. at 3419.

Notwithstanding *Leon,* we believe the exclusionary rule is also directed at the warrant-issuing process as a whole. *See State v. Marsala.* In *Weeks v. United States,* 232 U.S. 383, 394, 34 S.Ct. 341, 345, 58 L.Ed. 652 (1914), the Supreme Court stated that "the Fourth Amendment was intended to secure the citizen in person and property against unlawful invasion of the sanctity of his home by officers of the law acting under legislative or judicial sanction." The pre-*Leon* exclusionary rule likely encouraged magistrates to appreciate the seriousness of ensuring that warrants issued only upon a showing of probable cause. *State v. Marsala.* Suppression of evidence seized pursuant to a search warrant issued on less than probable cause alerts the magistrate that a constitutional error has occurred and instructs him on how to avoid future errors. *Id.*

The exclusionary rule encourages law enforcement officers to comply with the probable cause standard. *State v. Novembrino.* If evidence is excluded, even when the officer acts on the basis of a reasonable but mistaken belief that his conduct is authorized, police agencies will be encouraged to instruct their officers to take great care when applying for a warrant. *State v. Marsala; State v. Greene,* 162 Ariz. 383, 783 P.2d 829 (Ct.App.1989) (ends of the exclusionary rule furthered where future negligent departmental practices deterred). In the long run, the integrity of the entire warrant-issuing process will be served. We cannot agree with the Supreme Court that this benefit is "marginal or nonexistent." On the other hand, "[b]y eliminating any cost for noncompliance with the constitutional requirement of probable cause, the good-faith exception assures us

that the constitutional standard will be diluted." *State v. Novembrino*, 105 N.J. at 129, 519 A.2d at 854.

█ In conclusion, we believe *Leon's* good faith exception swallows the requirement that warrants issue only upon a showing of probable cause. It is also apparent that the costs to society from the exclusionary rule have been exaggerated. Therefore, we hold that there is no good-faith exception to the exclusionary rule under article II, section 10 of the New Mexico Constitution. The trial court's order of suppression is affirmed.

IT IS SO ORDERED.

ALARID, C.J., concurs.

BIVINS, J., dissents.

BIVINS, Judge (dissenting).

In declining to adopt the good faith exception to the exclusionary rule, the majority holds that art. II, Section 10 of the New Mexico Constitution provides greater protection than the comparable provision of the United States Constitution from unreasonable searches and seizures. While I would adopt the good faith exception as appropriate under the New Mexico Constitution, I favor applying it on a case-by-case basis, scrutinizing the facts and circumstances of each case so as not to abandon or lose the salutary effect of the exclusionary rule. The case before us provides just such a case where the good faith exception should be applied; therefore, I would reverse the trial court's order suppressing all evidence seized as a result of the search of defendants' residence.

In order to make clear my position, it is useful to first understand the principles we are dealing with and how they evolved. Much has been written on the subject and I plan to provide no more than a brief overview. *See generally* 1 W. LaFave, *Search and Seizure* § 1.3 (2d ed. 1987).

Prior to *Weeks v. United States*, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914), courts relied on disciplinary procedures or civil actions to punish errant law enforcement officers for violating the fourth amendment right against unreasonable search and seizure. Believing that such sanctions were ineffective to give force and meaning to the constitutional protection, *Weeks* adopted the rule that all evidence obtained as a result of the invalid search and seizure would be excluded in any trial against the accused. For almost fifty years the exclusionary rule announced in *Weeks* applied only to federal courts. The states were free to utilize less severe sanctions. *See State v. Dillon*, 34 N.M. 366, 281 P. 474 (1929) (establishing that New Mexico constitution does not give a defendant a state constitutional right to suppress evidence obtained in violation of art. II, Section 10 of the New Mexico Constitution). In 1961, the United States Supreme Court decided *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) which required for the first time that the states apply the exclusionary rule. As noted by the New Mexico supreme court, *Mapp* also marked a turning point in the recognized purpose of the exclusionary rule:

Prior to *Mapp*, courts relied to a great extent on the principle that the use of illegally obtained evidence would make the courts accomplices in the violation of the constitution, which would contaminate the judicial process and taint judicial integrity. However, *Mapp* relied principally upon the theory that excluding admissible evidence obtained by an unlawful search would have the effect of deterring future unlawful police conduct.

*State v. Snedeker*, 99 N.M. 286, 288, 657 P.2d 613, 615 (1982) (citations omitted). From *Mapp* until 1984, when the United States Supreme Court decided *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) the exclusionary rule was applied in both federal and state court actions.

*Leon* holds that the fourth amendment exclusionary rule should not be applied so as to bar the use in a prosecution's case of

evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be invalid. In adopting the good faith exception, the court noted that the exclusionary rule is a judicially created remedy intended to protect fourth amendment rights by acting as a deterrent, as opposed to a personal constitutional right of the aggrieved party. *Id.* at 906, 104 S.Ct. at 3411. Its pronouncement leaves the states free to interpret their own constitutions to require greater protection. That is the issue that must be decided in the case before us today: whether the New Mexico Constitution mandates greater protection.

In declining to adopt the good faith exception, the majority challenges the rationale of *Leon,* stating that the benefits of the exclusionary rule have been understated while its costs have been overstated. I do not find it worthwhile to join in that debate. Studies attempting to discern the costs and benefits of the exclusionary rule have been ambiguous and inconclusive; the results can be construed to support a variety of positions. *See Leon,* 468 U.S. at 907–08, n. 6, 104 S.Ct. at 3412–13, n. 6 (1984); *State v. Bolt,* 142 Ariz. 260, 267, n. 9, 689 P.2d 519, 526, n. 9 (1984) (correcting inaccurate figures referred to in *Illinois v. Gates,* 459 U.S. 1028, 103 S.Ct. 436, 74 L.Ed.2d 595 (1984)); *State v. Novembrino,* 105 N.J. 95, 151, 519 A.2d 820, 853 (1987); Davies, *A Hard Look at What We Know (and Still Need to Learn) about the "Costs" of the Exclusionary Rule: The NIJ Study and Other Studies of "Lost Arrests",* 1983 Am. B.Found.Res.J. 611, 617. Consequently, the purported "evidence" is insignificant and should not weigh in the decision as to whether to adopt the good faith exception.

Suffice it to say that we are writing from a clean slate and are free to adopt a rule that best suits New Mexico. In making that statement, I have not overlooked prior pronouncements by the supreme court of this state that have voiced displeasure with the exclusionary rule. *See, e.g., State v. Rascon,* 89 N.M. 254, 550 P.2d 266 (1976), where our supreme court said:

> [W]e have no intention of expanding upon the suppression of evidence one whit further than is required of us.
>
> \*     \*     \*     \*     \*     \*
>
> The pendulum has swung so far and paused so long in the direction of supposed protection of the rights of criminal defendants.... Confessions and inculpatory statements are useful and desirable in the detection and prosecution of crime. The search for truth and the achievement of justice are eased and facilitated, and efficiencies in law enforcement and the judicial process are encouraged. We are not disposed to distort the statutes we have cited beyond their terms so as to hamper the obtaining of statements and confessions within the parameters of constitutional safeguards.

*Id.* at 261, 550 P.2d at 273. *See also State v. Snedeker,* where our supreme court discussed the harsh impact of the exclusionary rule, noting that the public interest in the determination of truth in a trial must be weighed against the incremental benefit of applying the rule.

Ordinarily such dicta might compel a lower court to adopt a rule consistent with the frustrations expressed in such opinions. *See Alexander v. Delgado,* 84 N.M. 717, 507 P.2d 778 (1973) (lower court must follow the decisions of the supreme court). The majority does not feel bound by the dicta in *Snedeker* and *Rascon;* nor do I. There is sufficient uncertainty in existing New Mexico supreme court opinions on this subject to permit this court to address the merits of the issue without overstepping our role as an intermediate court.

The New Mexico supreme court, in *State v. Dillon,* established that the New Mexico Constitution does not give a defendant a state constitutional right to suppress evidence obtained in violation of art. II, Section 10 of the New Mexico Constitution. The court stated that it is illogical to suppress the evidence, either as compensation

for a trespass, for which the law affords another remedy, or as a punishment for dirty business by court officials, whom the courts have other means of disciplining.

[T]he object of the constitutional guarantee against unreasonable searches and seizures is not to prevent the use of a citizen's private papers as evidence against him, but to make unlawful the governmental invasion of his premises and privacy and the taking of his goods, irrespective of what is done or the use made of them. The innocent could derive no benefit from an interpretation of the constitutional guarantee into the rule of evidence contended for, and surely the guilty are not entitled to, and were never intended to be given a benefit and protection which are not shared equally by the innocent.

*Id.*, 34 N.M. at 375, 281 P. at 478.

As noted earlier, *Mapp v. Ohio* compelled New Mexico to apply the exclusionary rule when a defendant's rights have been violated. *See, e.g., State v. Rascon,* 89 N.M. 254, 550 P.2d 266 (1976); *State v. Garcia,* 76 N.M. 171, 413 P.2d 210 (1966). *State v. Cordova,* 109 N.M. 211, 784 P.2d 30 (1989), rejecting the less restrictive *Illinois v. Gates* "totality of the circumstances" test, establishes that New Mexico already adheres to a flexible approach to the application of the exclusionary rule. *State v. Cordova* states that *Illinois v. Gates* adopted the less rigid test because the lower courts were applying the *Aguillar–Spinelli* test in a rigid and technical fashion. The *Illinois v. Gates* court was convinced that such applications did not comport with the fourth amendment principle of probable cause, which was described as a "fluid concept—turning on the assess-

ment of probabilities in particular factual contexts—not readily or even usefully, reduced to a neat set of legal rules." *Cordova,* 109 N.M. at 215, 784 P.2d at 34.

Our court rejected the *Illinois v. Gates* test because our courts were applying the *Aguillar–Spinelli* test in a flexible manner and, therefore, adoption of a less rigid test was unnecessary. *Cordova,* 109 N.M. at 216, 784 P.2d at 35; *see also id.* at 216–17, n. 8, 784 P.2d at 35–36, n. 8 ("our holding today reflects our close acquaintance with the problems and traditions of our state. By tradition, we are better acquainted with these factors than is the United States Supreme Court.") Without finding that the New Mexico Constitution affords more protection to a defendant than the United States Constitution, the court stated:

We simply do not believe this tradition to be one of unthinking rigidity or overly technical application of the principles codified in Rule 5–211(E). Moreover, we believe these principles to be firmly and deeply rooted in the fundamental precepts of the constitutional requirement that no warrant issue without a written showing of probable cause before a detached and neutral magistrate. We are convinced that our rules, while providing a flexible, common sense framework, also provide structure for the inquiry into whether probable cause has been demonstrated....

*Id.* at 216, 784 P.2d at 35.

Thus, *Cordova* provides for flexibility; adopting the good faith exception, as applied on a case-by-case basis, perpetuates our state's flexible approach to search and seizure issues.[1]

As the majority notes, the search and seizure was conducted pursuant to a war-

---

1. Notably, state constitutions comparable to art. II, Section 10 of the New Mexico Constitution do not aid in resolving the issue of whether New Mexico should adopt the good faith exception. For instance, Idaho adopted *Leon,* construing its constitution consistently with the Fourth Amendment. *See, e.g., State v. Prestwich,* 116 Idaho 959, 783 P.2d 298 (1989). Wyoming also adopted the exception based on exigent circumstances and the officer's good faith. *See Patter-*

*son v. State,* 691 P.2d 253 (1984), *cert. denied, sub nom. Spoon v. Wyoming,* 471 U.S. 1020, 105 S.Ct. 2048, 85 L.Ed.2d 311 (1985). In contrast, New Mexico does not construe its same provisions consistently with the Fourth Amendment. *See Cordova.* Utah expressed its skepticism regarding adoption of the good faith exception. *See State v. Rowe,* 806 P.2d 730 (Utah App. 1991). Iowa and Montana have yet to decide the issue.

rant. No one challenges that the district judge who issued the warrant was detached and neutral. Nor can it seriously be contended that the officers did not act in good faith in reasonable reliance on the warrant. Indeed, the trial court, in its letter decision of November 22, 1989, found that if New Mexico had adopted the good faith exception, it would apply to this case. The only reason that the trial court suppressed the evidence seized as a result of the warrant search was that it found insufficient exigent circumstances to allow "a no-knock entry." The state does not challenge that determination. In an apparent effort to press for a decision either adopting or rejecting the good faith exception, the state assumes, for such purpose, that the no-knock warrant was invalid. Thus, the question of whether the warrant was defective is not before this court.

Nevertheless, in deciding whether to adopt the good faith exception, it is necessary to briefly comment on the state of the law with respect to no-knock warrants. The reason for doing so is obvious. If the purpose of the exclusionary rule is to deter law enforcement officers who reasonably rely on a search warrant issued by detached and neutral magistrate but ultimately found invalid, what purpose does that high cost serve when judges themselves are in disagreement as to the validity of the warrant? This is most significant to the decision in this case, as I will explain.

Although the United States Supreme Court has not had an occasion to rule specifically on the question of whether the fourth amendment compels that notice be given in the execution of a search warrant, *see* 2 W. LaFave, *Search and Seizure* § 4.8 (2d ed. 1987), it is generally recognized that officers must give notice of their authority and purpose prior to entry of the premises to be searched. *Id.* That rule has been adopted in New Mexico. *See State v. Sanchez*, 88 N.M. 402, 540 P.2d 1291 (1975). *Sanchez* appears to recognize an exception to that standard based on exigent circumstances. "An exigent circumstance exists if, prior to entry, officers in good faith believe that the contraband, or other evidence, for which the search is to be made is about to be destroyed." *Id.* at 403, 540 P.2d at 1292. But what was not decided in *Sanchez*, and has not heretofore been decided in any other case in New Mexico, is whether a determination of exigent circumstances can be made prior to execution of the warrant; that is, whether that determination can be made, as was done in this case, by the magistrate at the time the warrant was issued.

According to Professor LaFave, while it is generally agreed that police are excused from the usual notice requirement when reasonably acting to prevent destruction or disposal of the items named in the search warrant, there exists considerable disagreement as to what kind of showing of this risk must be made in order to justify entry without prior notice and refusal of admittance. *See* 2 LaFave, *Search and Seizure* § 4.8(d). According to this commentator, three approaches have developed, ranging from a "blanket rule" that the risk of destruction of evidence is deemed to be established merely by the fact that the objects named in the search warrant are by their nature amenable to ready disposal or destruction to requiring a particularized showing that the contraband would be lost or destroyed absent a no-knock entry. *See id.* at 280; *see also, e.g., People v. Gastelo*, 67 Cal.2d 586, 63 Cal.Rptr. 10, 432 P.2d 706 (1967) (en banc). Thus, until the appellate courts of this state make some pronouncement regarding the lawfulness of this aspect of a no-knock entry, it is unpersuasive to suggest exclusion of evidence serves the purpose of deterring the officers who executed the warrant or the district court judge who issued it. This is particularly so when the position taken by the magistrate here is supportable in the law.

In this case, Officer Gandara testified that based on her experience as a member of the Valley Impact Unit which investigated street traffickers of drugs, drug traffickers have flushed the evidence down the

toilet approximately five or six times. She understandably thought, as did the issuing magistrate, that under those circumstances a no-knock warrant was justified. Relentlessly holding on to the exclusionary rule under these circumstances accomplishes nothing. Until the appellate courts decide if a no-knock warrant based on the officer's prior experience is valid, exclusion of the evidence provides no meaningful punishment and certainly will not act as a deterrent to others. More importantly, the search for the truth by the use of perfectly good evidence is sacrificed. I do not believe that the New Mexico Constitution requires such result, nor do I think that prior opinions from our supreme court mandate it.

Additionally, in response to the majority's concern that the *Leon* good faith exception "swallows the requirement that warrants issue only upon a showing of probable cause," I agree with Justice Blackmun that the good faith exception should be watched closely and reconsidered if the purposes of the exclusionary rule are undermined in practice. *Leon*, 468 U.S. at 928, 104 S.Ct. at 3423 (Blackmun, J., concurring). I do not believe that we should reject the good faith exception without ever reviewing its practical application in our state. The majority's concern over the sanctity of the probable cause requirement seems to be the principal focus of the exception's critics. *See e.g.* 1 LaFave, *Search and Seizure* § 1.3. The overly broad effect of this concern is clear in this case, where the warrant was deemed invalid because of the nature of the authorized entry rather than a lack of probable cause. In short, the majority is willing to set aside case-by-case analysis of the constitutional interests affected in lieu of a simple but often disproportionate remedy. This overly-broad approach is particularly unnecessary in New Mexico, given *Cordova*'s rejection of the more liberal probable cause analysis enunciated in *Gates*. *Cf. Commonwealth v. Edmunds*, 526 Pa. 374, 586 A.2d 887, 904 (1991) (supreme court of Pennsylvania rejected good faith exception

partly because it adopted *Gates* and therefore eliminated "much of the prior concern which existed with respect to an overly rigid application of the exclusionary rule.").

The majority of states addressing the issue have adopted the good faith exception; with approximately nineteen adopting it and six rejecting it. *See Commonwealth v. Edmunds*, 526 Pa. at 399–403, 586 A.2d at 889–901; *see also id.* at 415, text at n. 5, 586 A.2d at 908, text at n. 5 (McDermott, J., dissenting). The states allowing the good faith exception have generally followed the United States Supreme Court's rationale; some have adopted the good faith exception based on additional or alternative reasons. For example, Arizona stated that although the court might not agree with the parameters of the exclusionary rule as defined by the Supreme Court, state and federal laws should be uniform. *State v. Bolt.*

In conclusion, I would adopt the good faith exception, to be applied on case-by-case basis in a situation such as this, where the officer acted in good faith and in an objectively reasonable manner. Therefore, I respectfully dissent.