667 P.2d 963

STATE of New Mexico, Petitioner,

v.

George A. CORTEZ, a/k/a George Robert Cortez, Respondent.

No. 14663.

Supreme Court of New Mexico.

Feb. 3, 1983.

Rehearing Denied March 10, 1983.

Paul Bardacke, Atty. Gen., William Lazar, Asst. Atty. Gen., Santa Fe, for petitioner.

Winston Roberts-Hohl, Santa Fe, for respondent.

## OPINION ON CERTIORARI

STOWERS, Justice.

This Court granted certiorari in *State v. Cortez,* in which the Court of Appeals 99 N.M. 727, 663 P.2d 703 set aside convictions of Cortez (defendant); ordered the suppression of evidence taken from 919 Encanto Circle, a Deming address; and remanded for a new trial. Judge Wood, concurring in part and dissenting in part, outlined his reasons for affirming the trial court.

In his opinion, Judge Wood discussed why he believed the evidence in question was properly seized and should not have been suppressed. As a result of this finding, Judge Wood found sufficient evidence to show an intent to distribute cocaine. Additionally, Judge Wood disagreed with the majority opinion regarding prosecutorial misconduct.

We adopt the opinion authored by Judge Wood of the Court of Appeals as the opinion of this Court. However, even though Judge Wood in his dissent has found sufficient evidence to show defendant's intent to distribute cocaine, the majority did not deal with that issue. We therefore remand to the Court of Appeals for the purpose of addressing that issue consistent with this opinion.

The publication of both the Court of Appeals majority opinion, which we reverse, and the dissent, which we adopt, are ordered. This opinion is also to be published.

IT IS SO ORDERED.

PAYNE, C.J., and RIORDAN, J., concur.

SOSA, Senior Justice, and WILLIAM R. FEDERICI, J., respectfully dissent.

SOSA, Senior Justice, adopts the majority opinion of the Court of Appeals as his own.

EXHIBIT A

IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

STATE OF NEW MEXICO,
Plaintiff-Appellee,

v.                                    No. 5587

GEORGE A. CORTEZ, a/k/a
GEORGE ROBERT CORTEZ,
Defendant-Appellant

Certiorari Denied as to defendant-appellant July 22, 1983.

APPEAL FROM THE DISTRICT COURT OF LUNA COUNTY

ZINN, Judge

Jeff Bingaman, Atty. Gen.,
William Lazar, Asst. Atty. Gen.,
Santa Fe,                Attorneys for Plaintiff-Appellee

Winston Roberts-Hohl
Singleton & Roberts-Hohl
Santa Fe,

Driggers & Driggers
Las Cruces,              Attorneys for Defendant-Appellant

## OPINION

WALTERS, Chief Judge.

Convicted of two counts of distributing marijuana to a minor, one count of trafficking in cocaine with intent to distribute, and one count of receiving stolen property, defendant appeals and presents five issues

which he claims require reversal. He has abandoned four other points raised in his docketing statement. *State v. Marquez,* 96 N.M. 746, 634 P.2d 1298 (Ct.App.1981). We reverse for a new trial.

The issues briefed by defendant are:

1. Was probable cause demonstrated for two warrants to search the house at 919 Encanto Circle?

2. Was the verdict regarding intent to distribute cocaine supported by substantial evidence?

3. Was the evidence of distribution of marijuana competent and substantial?

4. Was the charge and jury instruction regarding receiving stolen property so defective as to constitute fundamental error?

5. Was the trial court's refusal to grant a mistrial, upon the State's key witness's statement that he heard defendant belonged to the "Mafia," reversible error?

## 1. *The search warrants*

A juvenile informant told the officer who signed the affidavit for search warrant that defendant lived at 509 (or 504) South Platinum, and that he had seen defendant answer the door at 919 Encanto Circle to admit two of the juvenile's friends. One of the friends told the informant that he had seen "bags of pills and coke and all kinds of stuff" inside "that other house * * * [t]he one over at that circle." On the basis of these and other statements of the juvenile, the officer alleged in an affidavit for a warrant to search 919 Encanto Circle for drugs and stolen goods, that the juvenile twice had traded jewelry he had stolen to the defendant for marijuana at the Platinum address, and that defendant "is know[n] to frequent the above described house in this affidavit." A warrant was issued; during the search at 919 Encanto Circle the affiant saw items which appeared to correspond to the description of various goods reported to have been stolen in other burglaries. He sought and obtained a second warrant to search the Encanto Cir-

cle premises for those observed items. Defendant was ultimately charged with receiving stolen property which encompassed all of the jewelry seized in both searches of the Encanto Circle house.

Hearsay may provide evidence to furnish probable cause to believe that sufficient underlying circumstances exist to support affiant's belief that the items sought to be seized will be found upon search "provided (1) there is a substantial basis for believing the source of the hearsay to be credible, and (2) there is a substantial basis for believing that there is a factual basis for the information furnished." *State v. Snedeker,* 99 N.M. 286, 657 P.2d 613 at 617 (1982), citing N.M. R.Crim.P. 17(f), N.M.S.A.1978 (1980 Repl. Pamph.).

The factual basis for linkage of defendant to the premises at 919 Encanto Circle was the juvenile's statement that he had once seen the defendant open the door at that address. The juvenile had informed the affiant that defendant lived at another address. Information about the items allegedly to be found within the premises to be searched was provided by double unaccredited hearsay from the juvenile's friend. The affidavit attached a question-and-answer statement given by the juvenile to the affiant, in which the juvenile admitted committing several burglaries and bringing the stolen items to defendant's home at the Platinum Street address on two separate occasions.

*Snedeker, supra,* indicates the reasonableness of a magistrate's thought process which leads to a belief that stolen goods will be kept in a suspect's home and, thus, to justify issuance of a warrant (that otherwise meets the probable cause standards) to search the suspect's residence. The basis for issuance of the first warrant to search the Encanto Circle premises, however, is flawed in at least two respects: the officer had no grounds, according to the statements of his informant, to believe that defendant "frequented" the Encanto Circle address; the affidavit offers absolutely no underlying facts to support the reliability of

the information furnished by the informant's informant, or the credibility of that informant, that drugs or stolen goods would be found at that "other house * * * over at that circle."

*Snedeker, supra,* examined the facts recited in an affidavit for search warrant and made two significant observations: that from the facts presented, (1) the magistrate had probable cause to believe that defendant lived in the house to be searched, and (2) the magistrate had probable cause to believe that defendant was in possession of stolen property that would be kept at defendant's home. The sole nexus between this defendant and the premises searched was an allegation that the affiant knew defendant "who gives the address of 509 south platinum [sic] and is know[n] to frequent" the Encanto Circle house, and the informant's attached statement relating that he had once seen defendant at that address. Who held knowledge that defendant "frequented" the premises was not disclosed, nor were any other underlying facts stated which would support either the allegation or the source of that information.

"Frequent," when used as a verb, means "to associate with, be in, or resort to often or habitually." Webster's Third New International Dictionary (1976 ed.). The observance of defendant at the Encanto Circle location on one occasion, and the identification by the informant and the affiant of the Platinum premises as defendant's residence, does not establish probable cause to believe that defendant lived at 919 Encanto Circle, or even that he "frequented" that address.

There was nothing in the affidavit to establish probable cause that there were stolen goods at 919 Encanto Circle. There was nothing in the affidavit to establish probable cause to believe that it was defendant's home. There was double hearsay only from a reliable informant and from that informant's informant, to suggest that drugs would be found within the premises. The information contained in the affidavit and its attachments was more tenuous than that produced in *State v. Baca,* 97 N.M. 379, 640 P.2d 485 (1982). *Baca* nevertheless held

that the failure to detail sufficient underlying circumstances and reliable factual information in the affidavit prevented the magistrate from concluding that the criminal evidence sought would be found at the premises searched. As in *Baca, supra,* we hold that the search warrant for 919 Encanto Circle was not supported by sufficient information to establish probable cause, and thus the warrant was invalid and the search unlawful. Since the second warrant, issued a week later, was based on observations made during the first unlawful search, it too was improperly issued. *See Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). The penalty for seizing evidence in the course of unlawful searches is suppression of the evidence seized. *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *see State v. Everitt,* 80 N.M. 41, 450 P.2d 927 (Ct.App.1969).

The evidence seized from 919 Encanto Circle should have been suppressed.

## 2. *Evidence of intent to distribute cocaine*

Count III alleged that defendant possessed cocaine with intent to distribute it. Cocaine was seized at 919 Encanto Circle. That evidence cannot be introduced at a new trial, thus making it unnecessary for us to decide at this time whether there was or will be sufficient evidence to support defendant's conviction on that count.

## 3. *Competency of the minor's testimony*

Defendant's conviction on two counts of distributing marijuana to a minor resulted from the juvenile's testimony that defendant twice had traded marijuana to him for the stolen goods he had delivered to defendant. This case will be reversed for a new trial; we therefore review defendant's contention that as a matter of law the minor's testimony was not competent to prove the charges.

The argument is that (1) the substance traded was smoked by the witness and thus was consumed and unavailable as evidence, and (2) that the minor "was not established to be qualified" to identify marijuana.

Those issues were raised by pretrial motion; the court reserved a ruling to await development of the testimony at trial. After the witness had been fully examined on direct, and extensively cross-examined regarding his receipt of marijuana from defendant in exchange for the jewelry he had stolen, the defense moved for directed verdicts on the marijuana counts. The ground as stated was that the prosecution had not presented a "prima facie case of [the minor's] knowledge, experience or expertise in being able to identify marijuana * * *." The court's ruling expresses our view that the objection goes to the weight rather than to the admissibility of the witness's testimony. We quote the record:

> THE COURT: Apparently the real issue raised by the Motion that Counts 1 and 2 is whether or not the boy, . . ., who is the only one here to give us any evidence, was able to give us opinions, or not even opinion, simply to state flatly that he got marijuana. Now, that's all you have in the case.
>
> \* \* \* \* \* \*
>
> That he had smoked marijuana and had had some experience with it. * * * He never expressed any explicit opinion, that he saw the stuff, knew what it was, he tested it and smelled it, tasted it or did anything else other than he went for marijuana and that's what he got. All conclusionary.
>
> The problem is that in the early days of the law development in all of this so-called esoteric substances that were prohibited. What we generally require is that you establish what the stuff was. Some definite establishing of what it was. Gradually they allowed lay persons with a little bit of experience [to] testify on an opinion basis what it was. But in recent years the stuff has become so common and generally used that today without any explicit testing or without dealing with opinion evidence at all, it is just like money. Anybody can· say it was money; anybody could say it was coffee or tobacco and you don't call them on it. It is not any longer in that realm of esoteric opin-
>
> ion, that requires experts. Now they let anybody testify. . . . I think a simple statement, that's what it was, like saying that the car was red. That's an opinion, stated in the form statement of facts. He could say that was marijuana or he could have said it was a pack of Camels. Or he could have said it was a red automobile.
>
> The Jury is entitled to listen to it and judge whether or not what they heard he was judging correctly. I agree with you, it is a changing law, but it has changed drastically over the last half dozen years. Six years ago I would have granted your motion but I won't anymore [sic].

The admissibility of identifying evidence of a controlled substance from a user or addict, and the weight or sufficiency of such testimony, are discussed in two annotations at 75 A.L.R.3rd 717 (1977) and 95 A.L.R.3rd 978 (1979). The jurisdictions which have considered these questions are not uniform. We are satisfied, however, that under the evidence in this case, and the fact that the minor's identification of the substance was not once challenged on cross-examination, the court did not abuse its discretion in allowing the jury to assess the weight of the minor's testimony. *See* N.M. R.Evid. 701, N.M.S.A.1978; *State v. Luna,* 92 N.M. 680, 594 P.2d 340 (Ct.App.1979).

### 4. *The stolen property conviction*

Defendant complains of a defective indictment and an erroneous instruction given to the jury on the charge of receiving stolen property. Neither complaint was raised by motion or objection in the trial court. In the absence of fundamental error, *see State v. Lott,* 73 N.M. 280, 387 P.2d 855 (1963), and *State v. Hamilton,* 89 N.M. 746, 557 P.2d 1095 (1976), we decline to address alleged errors not called to the attention of the trial court. *Maldonado v. Haney,* 94 N.M. 335, 610 P.2d 222 (Ct.App.1980).

### 5. *Prosecutorial misconduct*

This point is raised and argued, but the defendant's briefs fail to cite a single case in support of the argument.

Defendant contends he was entitled to a mistrial because of an invited prejudicial remark made by the State's principal witness. The minor witness had testified that he had lied at the preliminary hearing because he "was scared" of being hurt if he "witness[ed] against" the defendant. The prosecutor channeled the questions that followed, even after being cautioned by the court to be sure of the answers being elicited, to the point of asking, "[W]hat reasons did you have for feeling afraid when you testified * * *?" The witness responded: "I heard that he was in the Mafia." Upon motion for mistrial the court denied the motion and gave a curative instruction, noting at the same time its awareness that the instruction only "theoretically" cured the improper answer.

The series of questions asked by the prosecutor related to who visited the witness before he testified at the preliminary hearing, and with whom the visitor had had lunch just before he visited the witness. Those questions sequentially followed the witness's statement that he had lied because he "was scared." The prosecutor ultimately obtained the answer which the trial court admonished the jury to disregard.

Normally a trial court's withdrawal of objectionable evidence from the jury's consideration has been held to cure its prejudicial effect. *State v. McFerran,* 80 N.M. 622, 459 P.2d 148 (Ct.App.1969); *but see State v. Rowell,* 77 N.M. 124, 419 P.2d 966 (1966). When the objectionable evidence appears to have been intentionally solicited, however, toward the end of prejudicing the jury against the defendant, prosecutorial misconduct is examined against the harmless error rule to determine whether a new trial should be allowed. *State v. Day,* 91 N.M. 570, 577 P.2d 878 (Ct.App.1978).

There were convictions in this case that were not dependent for proof upon the evidence that should have been suppressed. For purposeful misconduct to be considered harmless, there must be such overwhelming evidence of guilt that no reasonable probability exists that the effect of the misconduct contributed to the jury's verdict. *See*

*State v. Gonzales,* 93 N.M. 445, 601 P.2d 78 (Ct.App.1979) (effect of improperly admitted evidence). We are unable to conclude that the improperly elicited response from the State's witness did not influence the jury's convictions of defendant on the counts unrelated to the suppressed evidence.

Defendant's convictions are set aside; the evidence taken from 919 Encanto Circle is ordered suppressed; the matter is remanded for a new trial.

IT IS SO ORDERED.

LOPEZ, J., concurs.

WOOD, J., concurring in part and dissenting in part.

WOOD, Judge (concurring in part and dissenting in part).

I concur with the discussion in the majority opinion concerning the competency of the minor's testimony and concerning the stolen property conviction. I disagree with the majority's treatment and disposition of the search warrant and prosecutorial misconduct issues, and dissent from the disposition of those two issues.

*Search Warrant Issue*

■ The majority skew the facts.

(a) There were three search warrants. The first warrant authorized a search of defendant's person and the premises—504 South Platinum in Deming, New Mexico. There is no issue as to the propriety of this warrant or searches pursuant thereto. The second warrant authorized a search of defendant's person and the premises—919 Encanto Circle in Deming. The propriety of this warrant is attacked. The third warrant authorized a second search of the Encanto premises and was based on observations by officers during the first search of the Encanto premises. If the second warrant was improperly issued, the third warrant was also improper.

(b) The majority fail to identify what was included within the affidavit submitted in support of the first warrant to search the Encanto premises. The affiant was Detec-

**164**

tive Coussons. The detective included, as a part of the affidavit, the signed question and answer statement of Fry and reports concerning offenses at three residences.

(c) Fry's statement includes admissions that he burglarized two residences, stole property therefrom and traded the stolen property to defendant for marijuana. These being statements against penal interest, Fry's credibility is established. *State v. Archuleta*, 85 N.M. 146, 509 P.2d 1341 (Ct. App.1973), *cert. denied*, 414 U.S. 876, 94 S.Ct. 85, 38 L.Ed.2d 121 (1973).

(d) One of the offense reports, made by the detective, concerns the larceny at the Williams' residence. Property stolen included a tool box and some silver dollars. The report states that McGee told the detective that McGee was one of three persons who pushed the tool box out of the window of the Williams' residence; several silver dollars were recovered from McGee. The credibility of McGee is established. *State v. Archuleta, supra.*

(e) Both Fry and McGee refer to Morris Burns. The reliability of information supplied by Morris is the crucial issue. *Hudson v. State*, 89 N.M. 759, 557 P.2d 1108 (1976), *cert. denied*, 431 U.S. 924, 97 S.Ct. 2198, 53 L.Ed.2d 238 (1977). Morris went with Fry to 504 South Platinum when Fry first traded stolen property to defendant for marijuana. Fry went with Morris to the Encanto address; Morris was going there to talk to defendant. When Fry and Morris arrived, defendant opened the door and Morris went inside. The magistrate could properly infer that Morris knew where to locate defendant. *State v. Snedeker*, 99 N.M. 286, 657 P.2d 613 (1982).

McGee identified Morris as one of the three who stole the tool box. Morris told Fry that after the tool box was pushed out the window, defendant took it and that Morris had gone to defendant to try to get it back. Morris' activity in connection with this stolen property, together with Morris' knowledge of where to locate defendant, was sufficient for the magistrate to consider that information supplied by Morris was reliable. *State v. Snedeker, supra.*

(f) Fry's statements provided probable cause that defendant was dealing with stolen goods. Fry stated: (1) he twice traded stolen property to defendant; (2) Morris tried to get the tool box back from defendant; (3) defendant told Fry to bring defendant all the jewelry, but also wanted Fry to bring TVs and guns. Probable cause to search defendant for stolen goods was established; no one contends to the contrary.

(g) The majority state the affidavit failed to establish probable cause that stolen goods were located at the Encanto address. If the affidavit and supporting documents permit a reasonable inference that defendant lived at the Encanto address, there was probable cause to search that address for the stolen goods. *State v. Snedeker, supra; see also State v. Ferrari*, 80 N.M. 714, 460 P.2d 244 (1969). The majority state there was nothing to establish probable cause that defendant lived at the Encanto address. I disagree. Morris knew where to locate defendant and Morris went to the Encanto address. In addition, the detective stated that he knew defendant, and described him. The detective stated that defendant "gives the address" of *509* South Platinum (not 504) and "is know[n] to frequent the above described house in this affidavit." The "above described house" was the Encanto address. The magistrate could reasonably infer that the detective spoke from personal knowledge, regardless of the grammar used. The combination of the knowledge of Morris and the detective provided probable cause that defendant resided at the Encanto address. There is more here than in *State v. Baca*, 97 N.M. 379, 640 P.2d 485 (1982). Although not pertinent to this legal issue, at the suppression hearing, defendant testified he lived at the Encanto address.

(h) The majority state that only "double hearsay" suggested that drugs could be found at the Encanto premises. This is incorrect. Fry's statement, a part of the affidavit, includes Morris' report of the presence of drugs—only one layer of hearsay is involved. Morris told Fry of seeing

"bags of pills and coke. * * * Black Beauties and stuff like that." Morris' credibility being established, there was probable cause to search for controlled substances.

I would hold that the search warrants for the Encanto address were properly issued.

*Intent to Distribute Cocaine*

Cocaine was seized at the Encanto address. The majority hold that the cocaine should be suppressed. My view is to the contrary, thus, I answer the claim that the evidence was insufficient to show an intent to distribute. I would hold the evidence was sufficient. Thirteen and seven tenths grams of cocaine were found in bulk; twenty-four smaller packets of cocaine were found—one marked "1", five marked "½" and eighteen marked "¼". The amount, together with the packaging, negates the contention that the cocaine was for defendant's personal use and permits the inference of an intent to distribute.

*Prosecutorial Misconduct*

To reach the conclusion of purposeful misconduct, the majority omit a portion of the prosecutor's question, thus distorting what happened. The majority refer to objectionable evidence which "*appears* to have been intentionally solicited". (My emphasis.) I disagree with this characterization, and rely on the trial court record.

■ Fry gave a signed question and answer statement to the police. Fry repudiated this statement at the preliminary examination. At trial, Fry affirmed the statement, explaining that he had not told the truth at the preliminary examination. Asked why he testified as he did at the preliminary examination, Fry stated that he was scared of being hurt by defendant's friends.

The prosecutor then asked a series of questions directed to having Fry explain why he was scared; these questions produced nothing that explained Fry's fear. The prosecutor then asked:

> Q. O.K. Donald, what reasons did you have for feeling afraid when you testified on July 13, 1981, *besides what anybody told you?* [My emphasis.]

> A. I heard that he was in the Mafia.

Responding to the defense objection, the trial court remarked:

> THE COURT: —the problem, Mr. District Attorney, you don't know what you are going to get and if the question at that point had been objected to I would have sustained it. It is not proper testimony.

Neither the question asked nor the trial court's remark permits this Court to rule that the prosecutor intentionally solicited the "Mafia" answer.

This being a dissent, I do not quote the strong admonition of the trial court, to the jury, that the non-responsive Mafia remark be disregarded. On the basis of the trial record, I would hold any prejudice was cured by the trial court's admonition. *State v. King,* 90 N.M. 377, 563 P.2d 1170 (Ct.App. 1977); *State v. McFerran,* 80 N.M. 622, 459 P.2d 148 (Ct.App.1969).

I would affirm.