818 P.2d 880

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**William Randy SANSOM,
Defendant–Appellant.**

No. 12076.

Court of Appeals of New Mexico.

Sept. 3, 1991.

Tom Udall, Atty. Gen., Charles H. Rennick, Asst Atty. Gen., Santa Fe, for plaintiff-appellee.

Robert J. Jacobs, Taos, for defendant-appellant.

OPINION

ALARID, Chief Judge.

Defendant, William Sansom, appeals his conviction on two counts of aggravated assault and one count of being a convicted felon in possession of a firearm. Defendant advances three issues:

I. Whether the trial court erred in admitting a .22 caliber rifle found during the search of a trailer where the only evidence of probable cause in the affidavit supporting the search warrant is the fact that a truck used during the commission of the crime, and believed to have been carrying the rifle used in the crime, was found parked in front of the trailer within twenty-four hours after the commission of the crime.

II. Whether the trial court erred in not appointing defendant alternate counsel.

III. Whether the trial court erred in not granting defendant's motion for a continuance.

Because we determine issue I is dispositive, we do not reach issues II and III. We reverse because the evidence presented by the affiant in support of the application for the search warrant and underlying the probably cause determination was insufficient as a matter of law.

FACTS

On May 24, 1989, David Hudson was confronted by Danny Calloway and defendant during an outing along the Pecos River. Calloway asserted that Hudson had made unflattering remarks directed at Calloway's wife, and eventually Hudson and Calloway began exchanging blows. When witnesses attempted to intervene, defendant pointed a .22 caliber semi-automatic rifle at them and verbally threatened them with injury if they came any closer. After Hudson had been beaten, witnesses observed Calloway and defendant return to a pickup truck with the rifle and drive away from the scene. The incident, including a description of the truck and its license plate number, was immediately reported to the police. The next day a police officer observed the same pickup truck parked in front of a trailer at 5409 Gramma Road, in Chaves County, New Mexico. Based upon an affidavit recounting the facts as set forth above, a search warrant was issued to search the trailer, and a .22 caliber rifle was found inside.

DISCUSSION

I. Sufficiency of Affidavit

Defendant argues the affidavit in support of the search warrant failed to allege sufficient facts to permit the required independent determination of whether probable cause to search the trailer existed. We agree.

The affidavit in support of the search warrant indicated that (1) on May 24, 1989, Calloway and the defendant assaulted Hudson, with defendant using the butt of a rifle to beat him; (2) when others attempted to go to Hudson's aid, defendant pointed a .22 caliber rifle at them and verbally threatened them with injury if they came any closer; (3) one of the witnesses observed Calloway place in his truck an Uzi-type sub-machine gun and a .22 semi-automatic rifle before leaving the area; (4) the truck is described as a 1974 red and white GMC pickup truck with New Mexico license plate number LC8767; and (5) on May 25,

1989, a deputy located the above-described pickup parked in front of a trailer.

The trial court upheld the validity of the warrant reasoning that:

if the vehicle is parked in front of a house within 24 hours after the crime has been committed and we know that the matters to be seized were in the vehicle at the time, that that would authorize the issuance of a search warrant to search the house and the vehicle.

In New Mexico, before a valid search warrant may issue, there must be substantial evidence in the supporting affidavit to show: "(1) that the items sought to be seized are evidence of a crime; and (2) that the criminal evidence sought is located at the place to be searched." *State v. Herrera,* 102 N.M. 254, 257, 694 P.2d, 510, 513, *cert. denied,* 471 U.S. 1103, 105 S.Ct. 2332, 85 L.Ed.2d 848 (1985); *State v. Baca,* 97 N.M. 379, 640 P.2d 485 (1982); SCRA 1986, 6–208 (Repl.Pamp.1990).

We believe this case is controlled by *Herrera* and *Baca.* In *Herrera,* the affidavit recited sufficient information to establish probable cause that the defendant had murdered the victim. Although the affidavit contained a thorough description of the residence to be searched, it did not contain any facts stating why police officers believed that the residence to be searched was the defendant's home, or alternatively, any information as to why the officers believed that the evidence sought would be located at the place to be searched. The court rejected the state's argument that a reasonable inference of residence could be drawn from the evidence presented in the affidavit. The court found insufficient an affidavit that provided that (1) the residence was described in substantial detail; (2) the defendant was apprehended while driving away from the "general direction" of the described residence; and (3) the affiant observed unfrozen, fresh tire tracks at the observed residence. Noting that the affidavit merely stated the conclusion that the described residence was the defendant's home, the court held the search illegal. *See id.* at 257–58, 694 P.2d at 513–14.

In *Baca,* the supreme court reversed and remanded because the affidavit relied upon to secure a search warrant to search the suspect's residence failed to set forth an adequate factual foundation and was insufficient as a matter of law. The affidavit indicated that the alleged getaway car was found abandoned within a five-mile radius of the place to be searched. It also contained a statement from an informant that the suspect occupied the premises " 'from time to time'." *See id.* at 380, 640 P.2d at 486. The court said:

This information does not provide substantial evidence to support a conclusion that the items sought would be found in the named premises. Although a showing of probable cause that a person has committed a crime will permit a reasonable inference that evidence of the crime will be found in his house, *State v. Ferrari, supra,* [80 N.M. 714, 460 P.2d 244 (1969) ], such a principle is not applicable to this case. A neutral and detached judge cannot ascertain from a reading of the affidavit whether the defendant occupied the named premises during the time material to this cause. In fact, it is clear from the affidavit that the affiant himself was not satisfied that the defendant occupied the premises. Otherwise, he would not have sought to seize documents which would prove that the defendant occupied the named premises. Furthermore, nothing in the affidavit would apprise a neutral and detached judge that the items sought would be found at the named premises if the defendant did not live there. Also, the fact that the getaway car was found abandoned in a five-mile radius of the named premises is of no assistance in establishing that the items sought would be found there.

*Id.*

The state also relies upon *State v. Snedeker,* 99 N.M. 286, 657 P.2d 613 (1982), in support of its argument that the evidence supports an inference that the occupants of the pickup, together with the weapons, would be in the house. In *Snedeker,* the affidavit in support of the search warrant

failed to state specific reasons for believing that the stolen property would be located in the defendant's home. The court held that where the stolen property was not inherently incriminating and probable cause existed to believe that the defendant had committed the theft, the magistrate could assume that the property could be found at the defendant's residence. However, the affiant's personal knowledge of where the defendant resided established that the residence to be searched was that of the suspect. Therefore, the court upheld the search warrant. *See id.*

 These cases make the following few principles clear. First, where a material fact is not proved by direct evidence, before the required independent determination standard is satisfied, there must be substantial evidence from which the fact may be inferred. Second, if the place to be searched is a residence, the affiant must either possess personal knowledge that the suspect resides at the residence to be searched, or present substantial, credible evidence (which may include hearsay if the declarant meets the credibility and reliability standards established by our cases) demonstrating that another party possesses personal knowledge that the suspect resides at the described residence. Third, failing to present facts upon which personal knowledge might be found, the affiant must present sufficient facts to establish the reasonable inference that the suspect resides at the place to be searched. A search warrant may properly issue to search that residence only when substantial evidence supports the inferential chain whereby it is determined that the suspect resides at the residence. Thus, the affidavit and supporting documents must themselves directly establish or permit a reasonable inference that the suspect resides at the premises to establish probable cause sufficient to issue a warrant authorizing a search at that address. *See State v. Herrera; State v. Baca; State v. Ferrari,* 80 N.M. 714, 460 P.2d 244 (1969); *State v. Snedeker,* 99 N.M. at 290, 657 P.2d at 617.

 Where, as here, the magistrate relies upon just such an inferential chain, we defer to the magistrate's broad discretion unless the quantum of evidence underlying his probable cause determination is insufficient as a matter of law. *State v. Herrera,* 102 N.M. at 257, 694 P.2d at 513.

## A. Was the Evidence Sought Evidence of a Crime?

In this case, the evidence made available to the magistrate in the affidavit indicates that defendant and Calloway assaulted Hudson and that firearms were involved in the assault. We assume without deciding that the first prong of a probable cause determination was met and that at the time the application for the search warrant was made, Calloway and defendant were suspects in the commission of a crime and that the firearms were evidence of a crime. The second prong of the analysis presents the two questions addressed below.

## B. Whether the Affidavit Contained Sufficient Facts to Establish the Suspect Resides at the Trailer

 The affiant failed to set forth facts sufficient to directly establish that defendant made the trailer his residence. The affidavit merely indicated that the pickup truck described to police following the assault was parked in front, or near a specific trailer within twenty-four hours after the crime had been committed. No fact, based on motor vehicle division information, was presented as to the ownership of the truck. No fact, based on property ownership documents, was presented as to the ownership of the trailer. In short, the affidavit contains no facts other than the location of the described truck in front of a described trailer. This places the magistrate in the position of merely affirming the suspicion or belief of the affiant and is contrary to the controlling decisions as set forth above. *See State v. Cordova,* 109 N.M. 211, 784 P.2d 30 (1989). The facts provided in the affidavit in this case fail to directly establish that the trailer is the residence of Calloway or defendant. Moreover, the facts provided in the affidavit cannot support a reasonable inference that the trailer belonged to either defendant or Calloway.

*State v. Herrera.* Under the rationale of *Herrera* and *Baca,* as discussed above, this fails to meet the sufficient facts requirement underlying our independent determination rule and thus could not provide the magistrate with evidence from which he could know or reasonably infer that either defendant or Calloway could be found there.

C. *Whether the Affidavit Contained Sufficient Facts to Otherwise Establish the Evidence Could be Found in the Trailer*

The state argues that *Herrera,* relying on *Snedeker,* allows the affiant to establish *either* that the suspect resides in the place sought to be searched *or* otherwise establish that the items could be found there. Defendant points out, however, that the residence was not identified in the affidavit as belonging to *either* defendant or Calloway. Thus the magistrate again is forced to infer, based solely on the presence of the truck, which we have previously determined cannot be credited, that the evidence sought could be found in the trailer. Without some quantum of fact upon which to rely, the magistrate cannot reasonably conclude a nexus exists between the trailer and the truck sufficient to meet the independent determination requirement our cases and constitution require. *State v. Herrera; State v. Baca.* Without such facts, there is no substantial evidence that the evidence sought would be located in the trailer.

The state also relies on our recent case of *State v. Therrien,* 110 N.M. 261, 263, 794 P.2d 735, 737 (Ct.App.1990) (refusing to assume veracity of crimestopper's call; noting that reasons may exist to presume veracity of eyewitnesses and victims of crimes) to allege that Dolores Whatley, as the person providing the police with the information as to the location of the truck, and as an eyewitness to the assaults, carries sufficient credibility without any specific corroboration of reliability. While *Therrien* does note eyewitnesses and victims of crimes may not pose the reliability concerns posed by other types of informants, it also notes that tips are not to be a

substitute for legitimate and proper police follow-up investigatory work. *Id.* at 264, 794 P.2d at 738. The complete failure of law enforcement personnel to adequately investigate the ownership of the truck and the trailer precludes the magistrate from crediting Whatley's tip. Perhaps this would be a different case had some specific corroboration been forthcoming from the police. *Id.; see also State v. Bedolla,* 111 N.M. 448, 806 P.2d 588 (Ct.App.1991) (tip alleging criminal activity which is uncorroborated by police investigatory work cannot provide basis for investigatory stop); *State v. Barton,* 92 N.M. 118, 584 P.2d 165 (Ct.App.1978) (significant corroboration through police investigatory work of tip alleging criminal activity justifies investigatory stop).

The failure to investigate the tip or in any manner relate the results of any investigation if it was done, in the application for the search warrant, resulted in an affidavit which failed to contain sufficient facts to permit an independent determination of probable cause by the magistrate. We believe the guidelines set forth by our supreme court preclude us from upholding the finding of probable cause in this case. Accordingly, we hold that the affidavit failed to set forth sufficient facts to permit the magistrate to make an independent determination that the evidence sought could be found in the place for which the search warrant was sought.

II. Whether Admission of the Evidence Constituted Harmless Error

 The state submits that the admission of the .22 caliber rifle found during the search of the trailer was harmless error and that, therefore, the conviction should not be reversed. The rule in New Mexico is that, if a reasonable possibility exists that the evidence complained of contributed to the conviction, the state has the burden of proving beyond a reasonable doubt that the error was harmless. *See State v. Trujillo,* 95 N.M. 535, 624 P.2d 44 (1981); *State v. Dobbs,* 100 N.M. 60, 67, 665 P.2d 1151, 1158 (Ct.App.1983) (citing *Chapman v. California,* 386 U.S. 18, 87 S.Ct.

824, 17 L.Ed.2d 705 (1967)); *State v. Bell*, 90 N.M. 160, 560 P.2d 951 (Ct.App.1977). For error to be considered harmless there must be:

> (1) substantial evidence to support the conviction without reference to the improperly admitted evidence, (2) such a disproportionate volume of permissible evidence that, in comparison, the amount of improper evidence will appear so miniscule that it could not have contributed to the conviction, and (3) no substantial conflicting evidence to discredit the State's testimony.

*State v. Moore*, 94 N.M. 503, 504, 612 P.2d 1314, 1315 (1980); *State v. Day*, 91 N.M. 570, 577 P.2d 878 (Ct.App.1978); *State v. Self*, 88 N.M. 37, 536 P.2d 1093 (Ct.App. 1975). Defendant notes that the testimony at trial gave the jury different versions of the incident depending upon who was testifying and their relationship to the parties. Defendant contends that the admission of the rifle was not harmless error because the rifle served to corroborate the testimony of the state's witnesses and also served to impeach the testimony of the witnesses for the defense. Our review of the tape recordings of the trial supports defendant's view.

The state called five witnesses: David Hudson, who was beaten during the altercation; Trevor Wright and Tommy Barnett, both of whom were friends of Hudson; and Sharon Berry and R.H. Smith, both of whom were officers involved in the case. Wright and Barnett both testified that defendant pointed a rifle at them and identified the rifle seized during the search as the one pointed at them by defendant. The defense called three witnesses: defendant; Linda Fletcher, the fiance of defendant; and Sabrina Calloway, the wife of Danny Calloway. Both Linda Fletcher and Sabrina Calloway testified that the gun remained in the truck during the time the fight took place and that defendant did not point it at anyone. Defendant testified he did not remove the rifle from the pickup or point it at anyone during the altercation.

In light of the conflicting nature of the testimony at trial, we believe the rifle served the important function of impeaching the testimony of the witnesses for the defense and corroborating the testimony of the state's witnesses. For example, the prosecutor questioned Sabrina Calloway as to how Wright and Barnett could identify "this rifle" if it had not been taken out of the truck during the altercation. He referred to "this gun" during cross-examination of defendant and asserted that defendant had used it during the altercation. In his closing arguments, the state's attorney made repeated references to "this rifle" and "this weapon." During his closing arguments, he also apparently showed the rifle to the jury, explaining the make of the rifle and asserting Wright and Barnett could only have identified it if it had indeed been pointed at them during the altercation. Our review of the trial tapes reveals that the prosecutor continuously used the presence and admission of the gun to emphasize his points before the jury.

The trial was a classic "swearing match" where the introduction and evidentiary use of the rifle could have had a dramatic effect upon the jury. The credibility of the witnesses was very much in question due to the conflicting testimony. Seeing the rifle and the opportunity to identify it in court bolstered the credibility of the state's witnesses. A verbal allusion to the rifle could not have had the same effect. The nature of the testimony at trial and the way that the rifle was used indicates that there is a reasonable probability the rifle contributed to the conviction. *State v. Dobbs*, 100 N.M. at 67, 665 P.2d at 1158. The conflicting testimony of the witnesses for the defense was substantial evidence to discredit the state's testimony. *State v. Moore*, 94 N.M. at 504, 612 P.2d at 1315. Therefore, it was not "harmless error" to allow the use of the rifle as evidence.

### III. Whether the Evidence is Admissible Pursuant to the Good Faith Exception

The state argues the conviction could be affirmed under the rationale of the good faith exception to the exclusionary rule as set forth in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). This court declined to adopt the good faith

exception in *State v. Gutierrez*, 112 N.M. 774, 819 P.2d 1332 (Ct.App.1991) (Bivins, J., dissenting). *Gutierrez* does not preclude a different panel from considering the application of the good faith exception to this case; however, we decline to do so in this case.

Because the district court found probable cause existed, the good faith exception was not argued or considered below. The state concedes it did not preserve the issue below, but contends the district court's ruling should be upheld if it is right for any reason. *See State v. Beachum*, 83 N.M. 526, 494 P.2d 188 (Ct.App.1972). The right for any reason basis for affirmance is ordinarily applied to strictly legal questions. *Id.* In this case, the application of the good faith exception would require the trial court enter specific factual findings in support of its ruling. No evidence was presented. Because the state could have reasonably anticipated an unfavorable ruling on probable cause, it should have been prepared to offer evidence and argument for the good faith exception. Consequently, we decline to reach the good faith exception issue.

CONCLUSION

Reversed and remanded for a new trial, excluding the unlawfully obtained evidence.

IT IS SO ORDERED.

BIVINS, J., concurs.

DONNELLY, J., dissents.

DONNELLY, Judge (dissenting).

I respectfully dissent from the decision of the majority and would affirm defendant's convictions.

The majority reverses defendant's convictions for aggravated assault and felon in possession of a firearm, contending that the affidavit submitted in support of the search warrant was insufficient to establish probable cause for its issuance. While I agree that the affidavit might have described in greater detail the nexus between the residence sought to be searched and the vehicle parked in front of the residence, which defendant and a companion were shown to have used at the time of the charged offenses, nevertheless, I conclude that the affidavit contained sufficient facts from which the magistrate could reasonably determine that probable cause existed for the issuance of the search warrant.

Examination of the affidavit submitted in support of the search warrant and the facts detailed therein indicate that a proper inference could reasonably be drawn, connecting the truck used by defendant and his companion, Danny Calloway, to the residence described in the affidavit. Probable cause may be determined from the facts contained in an affidavit submitted in support of a search warrant and from inferences which may reasonably be drawn from the facts related therein. *See State v. Cortez*, 100 N.M. 158, 667 P.2d 963 (probable cause existed to believe that the defendant resided at a certain address where alleged co-participant in larceny, who knew where to locate the defendant, went to address to find the defendant, and address was same as address which police detective indicated the defendant was known to frequent), *cert. denied*, 464 U.S. 964, 104 S.Ct. 402, 78 L.Ed.2d 343 (1983); *State v. Snedeker*, 99 N.M. 286, 657 P.2d 613 (1982) (considering facts set out in affidavit and reasonable inferences drawn therefrom, affidavit describing firearms and ammunition to be found in the defendant's residence established probable cause for issuance of the search warrant).

In the instant case, the affidavit submitted by the police indicated that the trailer house sought to be searched was located at "5409 Gramma Road, north of Roswell, in Chaves County New Mexico." The affidavit also stated that Delores Whatley witnessed defendant and Danny Calloway assault David Hudson, that defendant used the butt of a rifle to beat Hudson, "breaking his nose, jaw and bones in the side of his head," and that Whatley observed Calloway "take from his ... 1974 red and white GMC Pickup, with New Mexico License Number LC8767, a small black Uzi type sub-machine gun, which he pointed at Delores Whatley, and verbally threatened to kill her." The affidavit recited that

Whatley observed Calloway put the "Uzi ... and a .22 semi-automatic rifle into the GMC Pickup ... before leaving the area." Additionally, the affidavit stated that the trailer house sought to be searched was located at "5409 Grmma Road, north of Roswell"; and that "on May 25, 1989, Deputy Robert H. Smith, *acting on information received from Delores Whatley, located the 1974 red and white pickup parked in front of a trailer at 5409 Gramma Road, in Chaves County, New Mexico.*" (Emphasis added.)

The facts related above, I believe, were sufficient to create a reasonable inference that Whatley was familiar with the GMC pickup driven by Calloway,[1] that she, along with David Hudson, identified defendant and Calloway as having perpetrated the charged offenses, and that she knew that one or both of them occupied or frequented the residence described in the affidavit.

The affidavit herein indicates that the officers presented the magistrate with evidence that the vehicle described in the affidavit was parked in front of the residence [2] the day following the commission of the charged offenses, thus permitting a proper inference to be drawn that defendant or Calloway, or both, occupied or frequented the residence and that the weapons used by them in assaulting Hudson, Whatley, and others might be found therein. *See United States v. Moscatiello,* 771 F.2d 589 (1st Cir.1985) (where truck linked to crime was parked in front of garage where suspicious activity had been observed; probable cause existed to search garage); *State v. Holman,* 109 Idaho 382, 707 P.2d 493 (Ct.App. 1985) (where car linked to crime was observed parked near mobile home where suspect was purported to reside; probable cause existed to search mobile home). If the facts contained in the affidavit permit a reasonable inference that defendant lived or frequented the Gramma Road address,

probable cause existed for the issuance of the search warrant. *See State v. Cortez* (where affidavit and supporting documents permit a reasonable inference that the defendant lived at described address, probable cause existed to search the residence for stolen goods); *see also State v. Snedeker* (all direct and circumstantial evidence alleged, as well as reasonable inferences drawn from the affidavit, may be considered). Thus, the affidavit was sufficient to satisfy the requirements for specificity required in *State v. Herrera,* 102 N.M. 254, 694 P.2d 510 (1985); and *State v. Baca,* 97 N.M. 379, 640 P.2d 485 (1982).

Considering that Whatley was an eyewitness to the charged offenses, that she provided police with the location of the vehicle used by Calloway and defendant and gave a detailed description of the trailer house where the vehicle in question was parked, these facts provided a sufficient basis upon which the magistrate could reasonably determine that probable cause existed for the issuance of the search warrant. *See State v. Elam,* 108 N.M. 268, 771 P.2d 597 (Ct.App.) (degree of specificity required in affidavit in support of search warrant may vary depending upon circumstances), *cert. denied,* 493 U.S. 832, 110 S.Ct. 105, 107 L.Ed.2d 68 (1989); *State v. Garcia,* 90 N.M. 577, 566 P.2d 426 (Ct.App. 1977) (affidavits are not to be construed in a technical manner, but are to be read with common sense). As observed in *State v. Donaldson,* 100 N.M. 111, 666 P.2d 1258 (Ct.App.1983), deference should be given to a magistrate's determination of probable cause and consideration may properly be given, in any facial review of the affidavit, to the fact that affiant was a law enforcement officer, and to his experience and training, in determining the effect of his observations in the context of probable cause.

1. The affidavit submitted by Detective Berry stated that Calloway took "from *his* * * * GMC Pickup" the sub-machine gun. (Emphasis added.)

2. The affidavit described the premises to be searched as "[a] green trailer house with a white stripe around the top, facing west, with one

yellow panel on the north side with stars and stripes, wind sock by the front door, located at 5409 Gramma Road, north of Roswell, in Chaves County New Mexico." The affidavit also stated, as grounds for the search, that a deputy sheriff "located the 1974 red and white pickup parked in front of a trailer at 5409 Gramma Road, in Chaves County, New Mexico."

Defendant raised two additional points on appeal: (1) a claim that the trial court erred in failing to provide him with a different court-appointed trial counsel; and (2) a claim that the trial court erred in refusing to grant a continuance so that he could take a polygraph test for use at his trial. Examination of the record indicates that the additional issues do not constitute reversible error. The record shows that defendant, on numerous occasions, missed scheduled appointments with his court-appointed counsel, and the record fails to support a proper basis for defendant's claim that his counsel had a conflict of interest which affected his defense of defendant, or that counsel failed to render proper legal representation at trial on his behalf. *See State v. Robinson,* 99 N.M. 674, 662 P.2d 1341, *cert. denied,* 464 U.S. 851, 104 S.Ct. 161, 78 L.Ed.2d 147 (1983). Additionally, since the record shows that defendant missed two prior scheduled appointments for the administration of a polygraph examination, defendant has failed to establish that the trial court abused its discretion in denying his motion for a continuance to allow him a further opportunity to take the examination. *See State v. Pruett,* 100 N.M. 686, 675 P.2d 418 (1984).

I would affirm defendant's convictions.