919 P.2d 1094

STATE of New Mexico,
Plaintiff–Appellee,

v.

Julio TAVE, Defendant–Appellant.

No. 15937.

Court of Appeals of New Mexico.

Feb. 29, 1996.

Tom Udall, Attorney General, Jennifer L. Stone, Ass't Attorney General, Santa Fe, for Appellee.

T. Glenn Ellington, Chief Public Defender, Darryl A. Bouchard, Ass't Appellate Defender, Santa Fe, D. Paul Branch, Ass't Public Defender, Alamogordo, for Appellant.

## OPINION

ALARID, Judge.

1. Defendant Julio Tave appeals his conviction for being a felon in possession of a firearm in violation of NMSA 1978, Section 30–7–16 (Repl.Pamp.1994). Defendant argues that the State wrongfully introduced the name or the type of the felony for which he had previously been convicted, and that the introduction of this evidence was so unfairly prejudicial as to constitute reversible error. On consideration of Defendant's arguments, we reverse and remand for a new trial.

FACTS

2. On February 5, 1994, Defendant's brother, William Tave (William), was assaulted and stabbed in his home in Alamogordo, New Mexico. On learning of the stabbing, Defendant and his friend, Ernesto Rivera (Rivera), drove to the hospital where William had been taken. Soon after, they left the hospital, allegedly to find Rivera's girlfriend.

The police officers who later arrested Defendant allege that Rivera admitted they went to Defendant's parents' house because Defendant wanted a shotgun. Rivera denied on the stand ever having made such a statement and the officers never took a formal statement, either written or oral, from him.

3. It is undisputed that Defendant and Rivera returned to the hospital, where they met Defendant's parents, who had also learned of William's stabbing. The family was upset and angry, and were trying to determine who had committed the assault.

4. The police arrived later to begin the investigation of William's stabbing. Lieutenant Marchand (Marchand), who was in charge of the investigation, testified that Defendant was being loud and boisterous, and disturbing other people in the waiting room. Defendant initially settled down somewhat when warned by the police to do so, however, when Marchand went over to interview him, he again became unruly and started using profanities. Marchand then placed Defendant under arrest for disturbing the peace. When another officer patted Defendant down, he found four shotgun shells in Defendant's pants pocket.

5. The police testified that they were approached by Defendant's father, Julius Tave (Julius), while on their way to recover the gun from Rivera's car, and that he said he had come to the hospital to get the gun back from Defendant. Both Rivera and Julius denied this account of events. Rather, Julius testified that he came to the hospital with the shotgun, intent on revenge, and it was Defendant who convinced him to put it in Rivera's vehicle. Julius also said that he told the officers that the gun was his, as were the shells in Defendant's pocket. Rivera also testified that Julius put the shotgun in his car, and that Defendant was trying to stop his father from doing anything stupid.

6. After his arrest for disturbing the peace, Defendant was also charged with being a felon in possession of a firearm in violation of Section 30–7–16. It is the method by which the State pursued this conviction that is principally at issue in this appeal.

7. Before opening statements were made, Defendant made a motion in limine to limit the State from presenting evidence of the particular felony or felonies for which Defendant had previously been convicted, for the purpose of proving the predicate felony conviction under Section 30–7–16. Specifically, Defendant alleged that it would be prejudicial and inflammatory for the jury to hear that he had been convicted of a prior firearms offense. He also argued that the nature or name of the prior felony conviction was irrelevant to the proof of any fact in the State's case. Defendant offered to stipulate to his prior felony conviction so that the State would not need to prove it at trial, and thereby avoid the name of the felony for which he had been convicted. Specifically, Defendant was concerned that the jury would believe that a person who had previously been convicted of a firearm offense would be more likely to carry a firearm, and that the jury would be more likely to believe that one previously convicted of a violent offense should not be allowed to carry a firearm. Defendant also objected to the uniform jury instruction which would require the State to insert the particular name of the felony.

8. The State argued that because there was no similarity between the two charges, there was little danger of prejudice. It also argued that the jury had the right to know the accused's violent history, and that it was as relevant that Defendant was a violent criminal as it was that he was a felon. In particular, the State argued that the fact that Defendant was a violent felon would be probative on cross-examination.

9. The trial court ruled that when a prior felony is by definition one of the elements of a crime, the State is entitled to prove the prior felony at trial. Defendant then requested that the trial court conduct a Rule 403 balancing test. SCRA 1986, 11–403 (Repl.1994). The trial court ruled that it had understood the jury to mean only that it had no problem applying Section 30–7–16 to violent criminals; the only way there could be prejudice would be if the prior felony were non-violent, in which case the jury might not follow the law and engage in jury nullification. The trial court therefore admitted the

evidence, ruling that there was no danger that the name of Defendant's prior conviction would have any unfair prejudicial effect.

10. Before his parole officer testified, Defendant renewed his objection to the name of the felony being introduced into evidence and again offered to stipulate to the prior felony. The trial court overruled Defendant's objection, but directed the State not to dwell on the point. The State asked Defendant's parole officer what the offense was for which Defendant was on parole and introduced a copy of his conviction into evidence. The State also used the name of the conviction in its opening and closing arguments.

11. The specific name of Defendant's conviction was again mentioned in the context of the jury instructions. Although defense counsel tendered a proposed jury instruction merely requiring the jury to find that Defendant had previously been convicted of a felony, the trial court accepted the State's proposed instruction, which required the jury to find that Defendant had been previously convicted of aggravated assault with a deadly weapon. Consequently, this was the instruction the jury was read, and on which they convicted Defendant.

## DISCUSSION

### I. *ADMISSION OF PRIOR CONVICTION*

12. Defendant makes basically one contention—that the admission into evidence of the name of the predicate felony for which he had been convicted was error and that the error was so prejudicial that his conviction should be reversed. This issue has not been decided in New Mexico, although both federal and other state courts have considered the question in interpreting their felon-in-possession statutes.

13. First, we examine the statute in question. Section 30–7–16(A) provides in pertinent part that "[i]t is unlawful for a felon to receive, transport or possess any firearm or destructive device in this state." A "felon" is defined as any "person who has been convicted ... by a court of the United States or of any state ... to a sentence of ... one or more years imprisonment and has not been pardoned." Section 30–7–16(C)(2). It is clear, then, that the statute only requires

that the accused person have been convicted of a crime with a sentence of one year or more imprisonment, and that he not have been pardoned; in other words, the State is required to prove Defendant's status as a felon, not the underlying felony.

14. In interpreting the federal felon-in-possession statute, the First Circuit stated:

[the statute] does not embrace additional facts such as a particular kind of felony. Congress required no gradation for seriousness, numerosity or recency....

... It is, of course, highly likely that such evidence would influence the jury's perception of the defendant, suggesting that he is a sufficient threat to society to warrant additional incarceration. Such information, however, has no tendency to make more or less probable the existence *of the fact* of a prior conviction, which is the only information that Congress has deemed of consequence concerning the defendant's criminal record. And it is precisely the tendency of such evidence to prejudice the jury's deliberations that makes it suspect.

*United States v. Tavares,* 21 F.3d 1, 4 (1st Cir.1994) (en banc). The *Tavares* court held that the evidence of the nature of the prior felony was irrelevant and inadmissible under Rule 401 of the Federal Rules of Civil Procedure because it is "wholly unrelated to the crime for which the defendant is on trial." *Id.; see also United States v. Jones,* 67 F.3d 320, 324 (D.C.Cir.1995) (holding that the nature of the prior felony is irrelevant to a felon-in-possession charge and therefore inadmissible); *United States v. Gilliam,* 994 F.2d 97, 103 (2d Cir.) ("The underlying facts of the prior conviction ... are completely irrelevant to [the crime of felon in possession]."), *cert. denied,* 510 U.S. 927, 114 S.Ct. 335, 126 L.Ed.2d 280 (1993); *Sanders v. State,* 96 Nev. 341, 609 P.2d 324, 326 (Nev. 1980) (holding that it is error to allow admission of the name of the prior felony in a felon-in-possession case). Because the evidence regarding the nature of the prior felony is irrelevant to the crime of felon-in-possession, it was inadmissible under SCRA 1986, 11–402 (Repl.Pamp.1994) ("[e]vidence which is not relevant is not admissible.").

We hold that the trial court erred in refusing to grant Defendant's motion in limine.

■ 15. On the other hand, we do not hold that the State was required to accept Defendant's offered stipulation in lieu of all testimony concerning his status as a felon. We hold only that details of the prior crime are irrelevant to prove the required element of the crime described in Section 30–7–16. To prove the status of felon without including the inadmissible evidence of nature or name of the underlying felony, the State has many alternatives from which to choose. "Other ways include a redacted record, testimony by a clerk, stipulation, a defendant's affidavit, or even, in the absence of controversy, judicial notice of the prior conviction. None of these alternatives is tainted by the inclusion of the prejudicial information." *Tavares,* 21 F.3d at 4. In the instant case, the State could either have accepted Defendant's stipulation or could have simply questioned Defendant's probation officer as to Defendant's sentence for his previous crime and whether it was over one year. Establishing these facts would render Defendant a felon within the meaning of Section 30–7–16.

■ 16. However, even though the decision to admit the evidence was error, there is still the question of whether that error was so prejudicial as to require reversal. *See, e.g., Sanders,* 609 P.2d at 326 (error in admitting evidence of nature of prior conviction does not require reversal where there is other overwhelming evidence of appellant's guilt). Under New Mexico law, "if a reasonable possibility exists that the evidence complained of contributed to the conviction, the state has the burden of proving beyond a reasonable doubt that the error was harmless." *State v. Sansom,* 112 N.M. 679, 683, 818 P.2d 880, 884 (Ct.App.1991). There is certainly such a reasonable possibility here, so the State must show, beyond a reasonable doubt, that the error was harmless.

17. For an error by the trial court to be considered as harmless, there must be: (1) substantial evidence to support the conviction without reference to the improperly admitted evidence, (2) such a disproportionate volume of permissible evidence that, in comparison, the amount of improper evidence will appear so miniscule that it could not have contributed to the conviction, and (3) no substantial conflicting evidence to discredit the State's testimony. *State v. Moore,* 94 N.M. 503, 504, 612 P.2d 1314, 1315 (1980); *Sansom,* 112 N.M. at 684, 818 P.2d at 885. While it may be the case that there was other substantial evidence to support Defendant's conviction, we cannot say that the amount of permissible evidence was so disproportionate as to make the inadmissible evidence "miniscule" in comparison. Both Julius and Rivera directly contradicted the police officers' account of what transpired and who had possession of the shotgun. None of the three police officers present at the scene ever took a written or oral statement from Julius or Rivera, so they could only rely on their reports and their memories. Although the State claims that the evidence "overwhelmingly" supports the conviction, we are not required to accept that characterization, and we do not. The transcript reveals substantial conflicting testimony, so that the jury's decision would ultimately depend solely upon which witnesses they found to be more credible. As the State argues, while "the jury *could have* inferred, without relying on or in any way referring to the specific name or nature of [defendant]'s prior felony conviction" (emphasis added), that standard is not sufficient. The State's burden is to prove *"beyond a reasonable doubt* that the error was harmless," *Sansom,* 112 N.M. at 683, 818 P.2d at 884 (emphasis added), and the fact that the error *might* have been harmless is not sufficient to satisfy that burden. *See id.* at 684, 818 P.2d at 885 (where the credibility of the witnesses is in question, there is a greater danger that erroneously admitted evidence will sway the jury).

18. It is also particularly relevant that, in this case, no witness testified that he or she saw Defendant with the gun. Rather, the State had to prove that Defendant had constructive possession. In such a case, the fact that the jury was told that Defendant had previously been convicted of a crime involving a deadly weapon certainly may have influenced its conclusion that Defendant had in fact possessed the shotgun. *See United*

*States v. Dockery,* 955 F.2d 50, 56 (D.C.Cir. 1992) (prior conviction evidence especially likely to be prejudicial when the government tries the count on a theory of constructive possession); *United States v. Palmer,* 37 F.3d 1080, 1087 (5th Cir.1994) (admission of nature of prior felony conviction is harmless when there is direct evidence that police officers saw the defendant with the weapon, but "[u]nder different circumstances, the admission of the information on this parole certificate would require reversal."), *cert. denied,* —— U.S. ——, 115 S.Ct. 1804, 131 L.Ed.2d 730 (1995). We therefore determine that the State has not met its burden of showing beyond a reasonable doubt that the error was harmless, the conviction should be reversed, and the case remanded for a new trial.

## II. *JURY INSTRUCTIONS*

19. Lastly, we address Defendant's argument regarding the jury instructions. Defendant had tendered a proposed jury instruction to the trial court which, although modeled on the Uniform Jury Instructions, omitted the name of the particular felony for which Defendant had been convicted. The State tendered its own instruction, which was in the form required by SCRA 1986, 14–701. That instruction required the jury to find that Defendant had been convicted of a particular felony, in this case aggravated assault with a deadly weapon. SCRA 14–701(2), n. 4. Defendant argues that adoption of the UJI, and inclusion of the name of the predicate felony in the instruction was prejudicial. We agree.

20. The Court of Appeals may consider error in jury instructions so long as the Supreme Court has not considered and ruled on them. *State v. Wilson,* 116 N.M. 793, 795, 867 P.2d 1175, 1177 (1994). Our Supreme Court has not ruled on SCRA 14–701, so this Court may question the validity of the instruction in the instant case. *See id.* at 796, 867 P.2d at 1178.

21. If an instruction is erroneous, "it presents an incurable problem and mandates reversal." *State v. Parish,* 118 N.M. 39, 41, 878 P.2d 988, 990 (1994). Use of uniform jury instructions can constitute reversible error, *id.* at 42, 878 P.2d at 991, even if that result seems ironic, *id.* at 47, 878 P.2d at 996. "Reversible error arises if . . . a reasonable juror would have been confused or misdirected." *Id.* at 42, 878 P.2d at 991.

22. In the instant case, it is hard to see how a reasonable juror would not have been more likely to convict Defendant when his or her mind was focussed on the nature of Defendant's prior conviction by the very language of the jury instruction. The jury instruction form required the jury to determine whether Defendant possessed a shotgun at the same time that it required the jury to determine whether he had previously committed an aggravated assault with a deadly weapon. We think that any reasonable juror could not help but be swayed by the language of the instruction towards believing that Defendant was more likely to have had possession of a firearm due to his previous conviction. "Of course, it flouts human nature to suppose that a jury would not consider a defendant's previous trouble with the law in deciding whether he has committed the crime currently charged against him." *Spencer v. State of Texas,* 385 U.S. 554, 575, 87 S.Ct. 648, 659, 17 L.Ed.2d 606 (1967). The trial court had the authority to alter the jury instruction when to do so would have been proper under the facts and circumstances of the case, *Wilson,* 116 N.M. at 795, 867 P.2d at 1177, and it was an abuse of discretion for the trial court to fail to do so.

## CONCLUSION

23. It was error for the trial court to allow the State to put the nature of Defendant's predicate felony conviction in evidence. It therefore should have been excluded under Rule 403. The State had alternative means of proving the conviction without naming it, even if it did not want to accept Defendant's stipulation. Because the State's case was strongly contested, and because its proof that Defendant had possession of the firearm was highly circumstantial, the error was not harmless, and reversal is required.

24. Furthermore, the trial court abused its discretion in not accepting Defendant's proposed jury instruction. Use of SCRA 14–701, with its inclusion of the name of the

predicate offense, was highly prejudicial, and unfairly focussed the jury's mind on the nature of Defendant's prior conviction, and so his character, at the very time they were determining his guilt or innocence. This constitutes a separate and independent ground for reversal.

25. For these reasons, Defendant's conviction under Section 30–7–16 is reversed, and the case remanded to the trial court for a new trial.

26. **IT IS SO ORDERED.**

FLORES and BUSTAMANTE, JJ., concur.